UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

April 5, 2019

Stephen V. Gimigliano, Esq.
Joshua A. Druck, Esq.
Gimigliano Mauriello & Maloney, P.A.
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, NJ 07962-1449
*Counsel for Plaintiff*

Paul Ferland, Esq.
Foran Glennon Palandech Ponzi & Rudloff, P.C.
40 Wall Street, 54th Floor
New York, NY 10005
*Counsel for Defendants*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:** **J&J Logistics Co., Ltd. v. Global Way International, Inc., et al.**
**Civil Action No. 17-5995 (SDW) (LDW)**

Counsel:

Before this Court are Plaintiff J&J Logistics Co., Ltd.'s ("Plaintiff") Motion for Summary Judgment against Defendants Global Way International Inc. ("Global Way") and James Wang ("Wang") (collectively "Defendants"), as well as Wang's Cross Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure ("Rule") 56. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332. Venue is proper pursuant to 28 U.S.C. § 1441(a). The motions are decided without oral argument pursuant to Rule 78. For the reasons discussed below, Plaintiff's Motion for Summary Judgment and Wang's Cross Motion for Summary Judgment are **DENIED**.

### I. BACKGROUND & PROCEDURAL HISTORY

Plaintiff, a corporation based in Guangzhou, China, is in the business of arranging for the transportation of goods from China to the United States. (Pl.'s Statement of Material Facts ("SMF") ¶ 1, ECF No. 35-2.) Wang is the sole shareholder of Global Way, a California-based

corporation that arranges for the shipment of imported goods from China to the United States. (Pl.'s SMF ¶ 2.)

Beginning in April 2012, Plaintiff and Global Way engaged in hundreds of shipping transactions whereby Plaintiff would arrange to ship goods from China to the United States. (Defs.' Resp. to Pl.'s SMF ¶ 4, ECF No. 39-5.) Typically, Global Way would first notify Plaintiff of a potential shipment and would identify the Chinese supplier. (*Id.* ¶ 6.) Plaintiff would then contact the supplier to learn "how many pieces, [and] what kind of cargo" was being shipped. (*Id.* ¶ 7.) Thereafter, Plaintiff would e-mail Global Way with the proposed shipping method and cost. (*Id.* ¶ 8.) If it was acceptable to Global Way, Plaintiff would pay the shipping costs up front, and would invoice Global Way at the end of every month for those costs as well as half of the premium that Global Way charged the end consumer. (*Id.* ¶¶ 9-12.)

For the first two years of their business dealings, Global Way paid Plaintiff's monthly statements in full. (Pl.'s SMF ¶ 14.) However, from June through December 2014, Global Way either paid in installments or failed to make any payments. (*Id.* ¶ 21.) When Plaintiff inquired about Global Way's $457,109.44 balance in January 2015, Wang explained that he was having difficulty collecting payments from a customer named "Michelle" and her company KS & Jinxing. (*Id.* ¶¶ 21-24.) Wang told Plaintiff, "I will try my best to send you every month, I cannot guarantee how much but I will try to send $20000.00 if possible to offset KS debit notes." (*Id.* ¶ 23.)

Beginning in February 2015, Global Way began making payments to Plaintiff to cover their ongoing business transactions, with some additional funds earmarked towards covering unpaid invoices from 2014. (Defs.' Resp. to Pl.'s SMF ¶ 25; *see also* Wang Dep. 128:2-18, ECF No. 39-3.) However, Global Way stopped making additional payments when U.S. Customs began to investigate Wang's other ventures. (Wang Dep. 99:17-99:20.) At the time of its last payment in April 2016, $300,776.70 remained outstanding. (Pl.'s SMF ¶ 28.)

On July 6, 2017, Plaintiff filed suit against Defendants in the Superior Court of New Jersey, Morris County. (ECF No. 1.) Defendants removed the action to this Court on August 9, 2017. (*Id*.) On June 18, 2018, Plaintiff filed an Amended Complaint asserting the following five counts: (i) breach of contract; (ii) book account; (iii) unjust enrichment; (iv) fraudulent inducement; and (v) piercing the corporate veil. (ECF Nos. 20, 24.) Plaintiff moved for summary judgment on October 12, 2018. (ECF No. 35.) On November 5, 2018, Defendants opposed Plaintiff's motion and Wang cross moved for summary judgment. (ECF Nos. 38-39.)[1] Plaintiff replied on December 7, 2018, and Defendants filed a sur-reply on December 21, 2018. (ECF Nos. 43, 46.)[2]

---

[1] Both Plaintiff's motion and Wang's cross motion only refer to Counts One, Two, and Five. Thus, this Opinion will not address the litigants' entitlement to summary judgment on Counts Three or Four.

[2] This Court notes that Defendants' briefs did not include a table of contents or a table of authorities. *See* L. Civ. R. 7.2. Additionally, Wang did not include a statement of undisputed material facts in support of his cross motion for summary judgment. *See* L. Civ. R. 56.1(a). Defendants are advised that their future submissions may be stricken should they fail to comply with the requirements set forth in the Local Civil Rules.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(e)). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## III. DISCUSSION[3]

### A. Contractual Claims

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustained [sic] damages." *EnviroFinance Grp., LLC v. Envtl. Barrier Co.*, LLC, 113 A.3d 775, 787 (N.J. Super. Ct. App. Div. 2015); *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (setting forth the elements for breach of contract). A book account claim "is similar in nature to a [claim for] breach of contract, except that the amount owed for services rendered can be proved by a statement of account." *CPS MedManagement LLC*

---

[3] Although Defendants argue that California law should apply to the claims at issue, they point to no real conflict between California and New Jersey law. Where there is no actual conflict between the substance of the laws of two jurisdictions, the law of the forum state applies, which in this case is the law of New Jersey. *See Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007); *see also Robeson Indus. Corp. v. Hartford Accident & Indem. Co.*, 178 F.3d 160, 165 (3d Cir. 1999) (explaining that a federal court sitting in diversity jurisdiction must apply the forum state's choice-of-law rules).

3

*v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 152 (D.N.J. 2013) (internal quotation marks omitted); *see also Fintech Consulting v. ClearVision Optical Co.*, No. 12-4956, 2013 WL 1845850, at *5 (D.N.J. Apr. 30, 2013) (referring to a plaintiff's book account claim as "redundant" to its breach of contract claim). Because Plaintiff's breach of contract and book accounting claims are similar, they will be analyzed together.

In the instant matter, the parties dispute the terms and nature of their agreement, which was never reduced to writing. Plaintiff contends that as part of its arrangement to ship goods for Global Way's customers, Plaintiff would prepay air or ocean carrier fees and then invoice Global Way for those prepaid fees plus half of Global Way's profit from the shipment. (Pl.'s SMF ¶¶ 4, 6, 10-11.)[4] Based on this understanding, Plaintiff alleges that Global Way breached their agreement when it failed to pay Plaintiff's invoices. (*Id.* ¶¶ 12-13, 27-28.) In contrast, Defendants assert that Plaintiff and Global Way were partners engaged in a "joint venture" and had split profits equally "from inception until the end of the relationship[.]" (Wang Decl. ¶¶ 14-15, ECF No. 39-4; *see also* Wang Dep. 15:21-24, 16:25-17:3.) Thus, when customers failed to pay Global Way, Defendants' understanding was that "[Plaintiff] and Global Way would ultimately have to split the losses[.]" (Wang Decl. ¶ 20.) As such, Defendants allege that paying half of the shared debt "was the limit of Global Way's legally [sic] responsibility." (Wang Decl. ¶ 21.) Ultimately, there are material issues of fact regarding Plaintiff and Global Way's relationship and whether they were a partnership that intended to share profits and losses. Therefore, summary judgment is denied as to Plaintiff's contractual claims in Counts One and Two.

### B. Piercing the Corporate Veil

Generally, a corporation is considered an entity separate from its shareholders. *Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc.*, 757 F. Supp. 2d 443, 456 (D.N.J.2010) (citations omitted). However, under certain circumstances, courts may pierce the corporate veil and "impose liability on shareholders who abuse the corporate form and use their corporation as an alter ego in order to advance personal interests." *Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*, No. 12-2899, 2015 WL 4315330, at *5 (D.N.J. July 14, 2015), *aff'd*, 704 F. App'x 137 (3d Cir. 2017) (citing *Sean Wood, L.L.C. v. Hegarty Grp., Inc.*, 29 A.3d 1066, 1076 (N.J. Super. Ct. App. Div. 2011)); *see Smith v. Simmons*, 638 F. Supp. 2d 1180, 1190 (E.D. Cal. 2009) (setting forth the two general conditions that must be met before the alter ego doctrine can be invoked). Piercing the corporate veil is an equitable remedy that only applies "when a plaintiff proves that a defendant shareholder abused the corporate form to perpetrate a fraud or injustice." *Cavusoglu*, 2015 WL 4315330, at *5.

In the instant matter, Plaintiff relies on Wang's deposition testimony to assert that he diverted Global Way's assets to pay personal and other debts, such that Global Way could no longer repay Plaintiff. (Pl.'s Moving Br. 20-21, ECF No. 35.) However, this Court notes that Wang's deposition transcript is difficult to follow, and he has proffered a declaration averring that "no Global Way funds or monies were ever spent or used in any way to address any personal debt

---

[4] This Court understands "the difference between the transportation costs charged to [Plaintiff] by the carrier . . . and the amount Defendants charged their customer for shipping," (*id.* ¶ 11), to refer to Global Way's profit margin on the shipment.

. . . or any debt of any kind" stemming from his other companies. (Wang Decl. ¶ 34.)[5] Thus, there are genuine issues of material fact as to whether Wang used Global Way to perpetrate a fraud such that he should be held personally liable for Global Way's debts.

This Court also notes that "[b]efore invoking an alter ego theory to pierce the corporate veil, evidence must first establish an independent basis to hold the corporation liable." *Cavusoglu*, 2015 WL 4315330, at *5. As discussed above, there are issues of fact that preclude summary judgment as to Plaintiff's contractual claims against Global Way. Because Wang's liability under the alter ego theory is conditioned upon Global Way's corporate liability, summary judgment is premature as to Count Five. *See, e.g.*, *Beijing Gongmei Import & Export Co., Ltd. v. Ijbara*, No. 10-2821, 2012 WL 3228711, at *4 (D.N.J. 2012) (denying a request to pierce the corporate veil because the plaintiff "must first establish liability for the underlying action").

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment and Defendant Wang's Cross Motion for Summary Judgment are **DENIED**. An appropriate Order follows.

    /s/ Susan D. Wigenton
SUSAN D. WIGENTON, U.S.D.J

Orig:  Clerk
cc:     Parties
       Leda Dunn Wettre, U.S.M.J.

---

[5] Despite Plaintiff's arguments to the contrary, Wang's declaration is not a "sham" affidavit. However, his testimony before the trier of fact will control.